Filed 4/14/14  P. v. Hicks CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B247303 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA378352) |
| v. | |
| ANISHA A. HICKS, | |
| Defendant and Appellant. | |

APPEAL from judgment of the Superior Court of Los Angeles County, Dennis J. Landin, Judge.  Affirmed.

Law Offices of John F. Schuck and John F. Schuck, under appointment of the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Linda C. Johnson and Ryan M. Smith, Deputy Attorneys General, for Respondent and Plaintiff.

Defendant Anisha A. Hicks appeals from her conviction by jury trial of vehicular manslaughter without gross negligence (Pen. Code, §191.5, subd. (b)), driving under the influence of alcohol (Veh. Code, § 23153, subd. (a)) and driving with a blood alcohol level of .08 per cent or greater (Veh. Code, § 23153, subd. (b)), and, with respect to the Vehicle Code violations, the jury's true finding that she caused great bodily injury (Pen. Code, § 12022.7, subd. (a)). Two issues are raised on appeal: that trial counsel for defendant rendered ineffective assistance by failing to object to bad character evidence elicited by the prosecutor and, in a related argument, that the trial court erred in refusing to allow defendant to present good character evidence in rebuttal. We find no basis for reversal, and affirm the judgment of conviction.

## FACTUAL AND PROCEDURAL SUMMARY

We review the record under familiar appellate principles. As to the substantiality of the evidence, we review it in the light most favorable to the judgment, and presume the existence of every fact the trier of fact could reasonably deduce from the evidence. (*Jackson v. Virginia* (1979) 443 U.S. 307; *People v. Lewis* (1990) 50 Cal.3d 262; and *People v. Johnson* (1980) 26 Cal.3d 557, 578.) That is not a difficult task in this case as there is little disagreement about the facts.

Sometime in the early morning of September 11, 2010, defendant was driving her car northbound on the 101 Freeway. She drove onto the Vermont off ramp. At the time she was driving at 50 miles per hour. The car veered off the ramp onto a steep slope. The slope was covered with vegetation, including trees and bushes. A homeless man, Adon Rodriguez, had erected a shelter on the slope and apparently was resting there when he was struck by defendant's vehicle. He rolled some 30 feet down the slope. The car came to a stop when it slammed into a tree. Defendant and her passenger exited the car and walked off the slope to a nearby gas station. At the station defendant called her automobile association asking that a tow truck be sent to the location of her car since it was stuck against a tree. After waiting about an hour, defendant called 911 and said she needed help. Asked if she needed the police, she answered that she did not. She also

said that there had not been an accident but that her vehicle was stuck at the tree. Her companion got a ride home and defendant walked back to the scene of the collision. By that time, about 3:30 a.m., fire equipment and personnel had arrived and were hosing down the vehicle, which was still smoking.

California Highway Patrol officers also arrived. Defendant identified her vehicle and said that it had veered off the road onto the slope. She showed signs of being under the influence: her breath smelled of alcohol, her eyes were watery, her speech was slurred, and she was unsteady on her feet. She explained that she had turned onto the off ramp, at 50 miles per hour, when she lost control of the car. She said that her brakes had failed. Defendant acknowledged that she had consumed alcohol, but only a single mixed cocktail, which she had drunk at about 9:00 the previous evening. She had been at the Nokia theater. She also had eaten some time before the cocktail. Field sobriety tests were taken. They indicated that defendant had a blood alcohol level of .154 percent (at 4:22 a.m.), followed by a reading of .144 percent two minutes later.

She was then arrested for driving under the influence of alcohol. Inside the patrol vehicle an officer informed her that a person had been killed. Defendant responded, "Is he dead?" Informed that he was, she asked, "Well, is he dead dead?" Informed again that he was, she remained quiet for the rest of the ride to the police station. Blood was taken there, at 6:11 in the morning; it revealed a blood alcohol reading of .13 per cent.

The accident scene showed a furrow cut into the ground from the point where the vehicle left the off ramp, down the slope, to the tree against which it came to rest and caught on fire. A post-mortem examination showed that the victim's chest cavity had been crushed in a manner consistent with having been rolled over by a car.

Defendant presented a defense, but did not testify.

An examination of the vehicle's braking system indicated that the master cylinder and a brake line hose had melted and therefore could not be examined, and that the rest of the brake system was in good working order.

3

Defendant was sentenced to two years in prison (the middle term) for vehicular manslaughter without gross negligence.  Sentence was stayed for the Vehicle Code offenses and the great bodily injury enhancement.  She filed a timely notice of appeal.

## DISCUSSION

### I

Defendant's principal argument on appeal is prejudice resulting from ineffectiveness of her trial attorney.  The claim is based on the allegation that the prosecutor elicited evidence that defendant showed no remorse when questioned at the accident scene.  Three passages are cited.

In the first, one of the responding Highway Patrol officers was asked whether, after he informed defendant that someone had died, "Did she appear to show any remorse?"  The answer was, "At the time, no."  In the second, after he recounted defendant's repeated question whether the victim was "dead, dead," the officer was asked:  "Did she appear to show any remorse?"  The answer was, "No."  In the third, the officer was asked on cross-examination by defense counsel, "It's your testimony Ms. Hicks at no time showed any compassion?", to which the response was, "Correct."  The officer was next asked whether he ever saw defendant "break down after hearing somebody died?", to which he answered, "No, not that I recall.  Definitely not in the patrol vehicle."

There was no objection, motion to strike, or request for a jury admonition as to any of these questions or responses.  On appeal, defendant argues that the failure to object or seek some other kind of relief deprived her of the effective representation by counsel to which she is entitled.  The point is raised on both statutory and constitutional grounds, including claims of federal constitutional error.[1]

---

[1] Plaintiff argues that failure to raise the federal constitutional ground forfeits that claim on appeal.  We do not agree that the claim is forfeited.  (See *People v. Dement* (2011) 53 Cal.4th 1, 32, fn. 6; *People v. Boyer* (2006) 38 Cal.4th 412, 441, fn. 17.)

A claim of ineffective representation based on a failure to object is cognizable on appeal. But the bar is high. As reiterated by our Supreme Court, "We have repeatedly stressed 'that "[if] the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation" the claim on appeal must be rejected.' [Citations.]" (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266.) Thus, it must appear "that the omission or omissions were not attributable to a tactical decision which a reasonably competent, experienced criminal defense attorney would make. [Citation.]" (*People v. Williams* (1988) 44 Cal.3d 883, 936.) The principle of deferential scrutiny on appeal is grounded, in part, on the danger of second-guessing where claims of ineffective assistance of counsel are made. "'[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.'" (*People v. Ledesma* (1987) 43 Cal.3d 171, 216 (*Ledesma*), quoting from the United States Supreme Court decision in the leading case in the field, *Stickland v. Washington* (1984) 466 U.S. 668, 689, hereafter, *Strickland*.) And, as *Ledesma* also instructs, second-guessing the quality of legal representation at trial could adversely affect the quality of trial counsel and the functioning of the criminal justice system, as trial attorneys may be tempted to exercise discretion principally to defend themselves against the clients' claims of ineffective assistance after trial. (*Ledesma,* at p. 216.)

More particularly, in reviewing a claim of ineffective assistance of counsel, reviewing courts defer to the attorney's reasonable tactical decisions; indeed, "there is 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. [Citations.]'" (*People v. Jones* (2003) 29 Cal.4th 1229, 1254.) Tactical decisions by trial counsel generally are not deemed reversible, and the attorney's decision-making must be evaluated in the context of the available facts. "[I]n the usual case, where a counsel's trial tactics or strategic reasons for challenged decisions do not appear on the record, we will not find ineffective assistance of counsel on appeal unless there could be no conceivable reason for counsel's acts or omissions. [Citations.]" (*Id.,*

5

at p. 1254.*)* And "[f]ailure to object rarely constitutes constitutionally ineffective legal representation. [Citation.]" (*People v. Boyette* (2002) 29 Cal.4th 381, 424.)

*Strickland* also holds that a reviewing court may choose to examine the issue of resulting prejudice before or even without reaching the issue of competent representation. Indeed, it may be preferable to do so. (*Strickland, supra,* at 466 U.S. 697.) California follows the same approach. (See *In re Cox* (2003) 30 Cal.4th 974, 1019; *People v. Fosselman* (1983) 33 Cal.3d 572, 583.)

Following that guidance, we discuss the issue of error only briefly. Defendant argues there is no justifiable basis for trial counsel not to have raised some kind of objection to the prosecutor's questions about her lack of remorse. But it is not at all clear that the prosecution's questions sought to elicit irrelevant evidence. They were asked in the context of defendant's behavior at the scene. There was no showing that she even knew that her car had struck someone during the initial field questioning. She was concerned about having her car towed away. And this question bore on the extent to which she was intoxicated, which in turn informed the likelihood that she had driven under the influence of alcohol. At that point she had nothing beyond her own property and inconvenience to be remorseful about. Once informed that someone had been killed in the accident, she asked a question to verify that was really so and, on being informed that it was, said nothing more.

Second, trial counsel may well have made the not uncommon tactical decision to do nothing that might invite closer jury scrutiny toward defendant's behavior, such as an objection or even an admonition might have done. As we shall discuss, the situation might have been different depending on how, if at all, the prosecutor chose to treat the exchange in summation. But she never raised it again.

Of course, counsel could have asked for a sidebar, some sort of pinpoint jury instruction, admonition, or done something else. Based on the record we have, we cannot say that the decision of defense counsel not to object was so deficient, if deficient at all, as to deprive defendant of her constitutional right to effective assistance.

6

Thus, the claim of ineffective representation fails on the first prong of the inquiry: insufficient representation was not shown.  But even if we were to conclude that it succeeded, no prejudice has been shown.

The burden of proving resulting prejudice from ineffective assistance of counsel is on the defendant asserting that claim, and the burden is proof by a preponderance of the evidence.  To prevail, the defendant must demonstrate that trial counsel's representation fell below an objective standard of reasonableness.  A reasonable probability is one that is sufficient to undermine confidence in the outcome.  (*People v. Weaver* (2001) 26 Cal.4th 876, 92 and cases cited.)

Here, the showing is far short of that standard.  First, the evidence of guilt was strong.  While defendant admitted having only a single drink hours before the accident, her blood alcohol level belied the claim.  It was elevated far above the standard of .08 percent.  She was unsteady, her speech was slurred, her eyes watery, and her breath smelled of alcohol.  This was her condition when interviewed more than an hour after the accident (we know that because she said she had been waiting for over an hour for the tow truck to appear).   The decedent was hit when defendant's car exited onto an off ramp at 50 miles per hour.  It left a path of debris from the off ramp curb to the shelter where the homeless man was resting, and on to the tree into which it collided and burned.  The claim that her brakes had suddenly failed was not credible and, understandably, it was not credited.  The braking system was inspected and, except where it had melted due to the collision and fire, showed no sign of being out of order.  A review of the record demonstrates that trial counsel did what he could with what he had to work with, but the jury was not persuaded.

Against this we have the responses of California Highway Patrol officers under questioning that defendant did not demonstrate remorse.  That is hardly surprising.  As we have discussed, these answers were in the context of her reaction when she returned to the scene of the accident and, so far as the evidence shows, she did not know that anyone had been injured, let alone killed.

7

The calculus of possible prejudice might be different if, in opening or closing summation, the prosecutor had tried to capitalize on these responses, to portray defendant as a remorseless, callous individual. (See *People v. Guiton* (1993) 4 Cal.4th 1116 [where prosecutor urges conviction on two theories, only one of which is supported by substantial evidence, error in the conviction is not reversible unless prosecutor argued the invalid ground to the jury].) Here, lack of remorse was not mentioned at all by the prosecutor. Defense counsel referred to it in argument only obliquely. Referring to the fact that defendant had called 911 for assistance, an act which, counsel argued, would make no sense if one did not know someone had been killed, he argued "Who calls 911 if you're asking for triple A. You call triple A. If she's this evil person with no remorse, why does she call 911? Let's use common sense and logic here."

There is no basis to conclude that, if error occurred by the prosecutor asking about remorse or by defense counsel not objecting, the outcome of the case would have been different without the error. The error, if there was one, was harmless under any standard.

## II

In her case-in-chief, defendant sought to present testimony of her father about the condition of the car defendant was driving (which he had given to her), and about her good character, to rebut "her supposed lack of remorse and claimed propensity for lying." Her attorney argued that the prosecutor's evidence had painted her as "some kind of person that has no remorse for what happened here . . . [T]hey have essentially put her bad character into evidence." Counsel argued that her father would testify that she was suicidal, had lost weight and had trouble sleeping," which would rebut the prosecutor's allegations "that she's somehow not remorseful." The prosecutor objected, arguing that she had done no such thing. She argued that character is admissible only if relevant to the charge, and in this case "the fact that Ms. Hicks is college educated and a nice person and the other testimony that counsel would seek to elicit from Mr. Hicks is nothing more than testimony designed to evoke sympathy from the jury[,] which is impermissible." The court ruled that it would allow the father to testify about the car, but not about defendant's character because her character was not relevant. Defendant's attorney

8

rejoined that defendant's sister had testified about their relationship, and that was allowed over objection. The father's testimony, counsel argued, was no different. The court responded that this would be true if defendant testified.

At that point defendant's counsel stated that he "wasn't offering her college background to suggest that, because she's college educated, she's honest. That would be character. What I'm saying is that the jury should be allowed to hear—whether she takes the stand or whether Mr. Hicks takes the stand, a jury is entitled to learn some background just like they would learn any background on any other witness. So the analysis of whether or not Mr. Hicks could testify as to her honesty and veracity I understand is not coming in as to character. I was asking the court to allow Mr. Hicks to testify as to her background, not for the purposes of character, but just so the jury has an idea of who she is, and that could be established not only if she testifies but any witness with knowledge. Obviously a father would have knowledge of his daughter's educational background." The court excluded this proffer as irrelevant.

First, the statement of defense counsel disavowed any purpose of seeking to present the father's testimony on character. That effectively waived the argument that defendant was entitled to present such testimony. Defendant's college education and "background" had nothing to do with the case.

Beyond this, the purpose previously espoused by defense counsel was that the evidence would go to rebut the implied claim that defendant was not remorseful. As the trial court pointed out when the issue was first raised, the testimony from the Highway Patrol officers was about whether she was remorseful at the time of their encounter, not whether she was remorseful at a later time. As the trial court pointed out, the situation would have been different if defendant had testified at trial (See Evid. Code, § 786). But she did not, and the evidence was properly excluded under Evidence Code, section 1101.

We also note that the facts, if they are the facts, that defendant had indicated remorse in the days and weeks following the accident and had lost sleep and was even suicidal are more readily explained by her facing by then, felony charges and a possible prison term. Except, perhaps, for a hardened criminal, that might well cause anyone to

9

lose sleep and suffer anxiety. While neither side nor the court appears to have expressly argued the application of Evidence Code section 352 to the facts presented here, the concept embodied in that statute bears on whether excluding the proffered evidence, if error at all, was harmless: the probative value of the evidence was minimal at best.

We find no abuse of discretion in the trial court's rulings nor harm or error in its exclusion of the proffered evidence.

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EPSTEIN, P. J.

We concur:

WILLHITE, J.

EDMON, J.*

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.